FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

2011 APR 12  PM 3: 32

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

| | |
|---|---|
| RUFUS SMITH<br>1934 Afton Lane<br>Jacksonville, Florida 32211 | ) CASE NO.:  3:11-CV-345-J-32TBT<br>)<br>)<br>) |
| and | ) |
| | ) |
| WINSTON JUDGE<br>4327 Habana Avenue<br>Jacksonville, Florida 32217 | )<br>)<br>) |
| and | ) |
| | ) |
| MARCEL WHITE<br>6042 Ribault Road<br>Jacksonville, Florida 32209 | )<br>)<br>) |
| and | ) JUDGE |
| | ) |
| FRANCINE LAFAVOR<br>11766 Alexandra Avenue<br>Jacksonville, Florida 32218 | )<br>)<br>) |
| and | ) |
| | ) |
| DAMIAN BELL<br>1312 Copper Plantation Court<br>MacClenny, Florida 32063 | )<br>)<br>) |
| and | ) |
| | ) |
| MARVIN WILSON<br>2538 West 43rd Street<br>Jacksonville, Florida 32209 | )<br>)<br>) |
| and | ) |
| | ) |
| JOHNNY BUCHANAN<br>11522 Otters Den Drive<br>Jacksonville, Florida 32219 | )<br>)<br>) |
| and | ) |

TIMOTHY NORRIS )
7730 Pickett Street )
Jacksonville, Florida 32208 )
)
and )
)
RODERICK SPANN )
1072 Autumn Tree Lane )
Orange Park, Florida 32065 )
)
and )
)
)
MARCK NARCHO )
703 8th Avenue N )
Jacksonville Beach, Florida 32250 )
)
and )
)
DOUGLAS ABDUL-HAQQ )
2847 Lantana Lakes Drive West )
Jacksonville, Florida 32246 )
)
and )
)
RODERICK LAWS )
11650 Kennewick Court )
Jacksonville, Florida 32218 )
)
and )
)
PRUDENCIA FRAYSAVAGE )
4336 Eagle Landing Parkway )
Orange Park, Florida 32217 )
)
and )
)
ANTONIO PATE )
13758 Devan Lee Drive East )
Jacksonville, Florida 32226 )
)
and )
)
JAMES McKINNEY )
10033 Lancashire Drive )

Jacksonville, Florida 32219 )
)
and )
)
ANTONIO PORTER )
11573 Coral Ridge Ave. )
Jacksonville, FL 32218 )
)
and )
)
ANTHONY RAGANS )
7190 Oxfordshire Avenue )
Jacksonville, Florida 32219 )
)
and )
)
PERMAN HAGANS )
4606 Carriage Crossing Drive )
Jacksonville, Florida 32258 )
)
and )
)
TIMOTHY BYNUM )
8220 North Hot Springs Drive )
Jacksonville, Florida 32244 )
)
and )
)
ROBERT HICKSON )
12601 Shirley Oaks Drive )
Jacksonville, Florida 32218 )
)
and )
)
JOHNNY BATTLES )
1045 Turtle Creek Drive N. )
Jacksonville, Florida 32218 )
)
BRIAN RAGIN )
11590 Longwood Key Drive East )
Jacksonville, Florida 32218 )
)
and )
)
RICKEY ADAMS )
5248 Angel Lake Drive )

Jacksonville, Florida 32218                    )
                                               )
and                                            )
                                               )
DWIGHT WILLIAMS                                )
85664 Bostick Woods Dr.                        )
Jacksonville, FL 32034                         )
                                               )
        Plaintiffs,                            )
                                               )
vs.                                            )
                                               )
CONSOLIDATED CITY OF                           )
JACKSONVILLE,                                  )
Office of General Counsel                      )
117 West Duval St., Ste. 480                   )
Jacksonville, FL 32202                         )
                                               )
and                                            )
                                               )
JACKSONVILLE ASSOCIATION OF                    )
FIREFIGHTERS, LOCAL 122, IAFF                  )
625 Stockton Street                            )
Jacksonville, Florida  32204                   )
                                               )
        Defendants.                            )

## CLASS ACTION COMPLAINT

(Type: Equal Protection Based on Race, Color, *42 U.S.C. § 1983*; Pattern & Practice
Disparate Treatment Discrimination Based on Race, Color, *42. U.S.C. § 2000-e, et seq.*
(Title VII); Discrimination, Disparate Treatment, and Pattern and Practice *42 U.S.C. §
1981*; Disparate Impact Discrimination Based on Race, Color, *42 U.S.C. § 2000-e, et seq.*
(Title VII); Conspiracy to Interfere With Civil Rights, *42 U.S.C. § 1985*
and *28 U.S.C. § 1343(a)*; Equal Protection Based on Race, Color, *Florida Constitution
Article I, § 2*; Disparate Impact Discrimination Based on Race, Color, *Fla. Stat. § 760. 10*;
Pattern & Practice Disparate Treatment Discrimination based on Race, Color,
*Fla. Stat. § 760.10*; Declaratory Action.)


## JURY DEMAND ENDORSED HEREON

4

**INTRODUCTION**

i.      This is a systemic and/or Class Action brought by African- and Native-American

firefighters employed by the City of Jacksonville in the Jacksonville Fire & Rescue Department

(the "City" or "JFRD") against both the City and the Jacksonville Association of Firefighters,

Local 122, IAFF ("Union") (collectively, "Defendants") for discrimination on the basis of race in

relation to the City's promotional process.  The promotional processes at issue (and at all ranks

involved herein) include the use solely of a written multiple-choice examination, dictated by the

Defendants' Collective Bargaining Agreement ("CBA"); rank ordering based on the results of

that examination, set not by validity standards but dictated by the Defendants' CBA; a cut-off

score of 70, set not by validity standards but by the CBA.

         The results and rank-ordered eligibility lists are then used by the City and its municipal

Jacksonville Fire and Rescue Department ("JFRD") to dictate the promotion of firefighters to

senior officer ranks within JFRD; an eligibility list expires after two years, as according to the

CBA and rules of the City.  This promotional process and the requirements under the CBA

contract have remained virtually unchanged for decades and have consistently resulted in adverse

impact towards Blacks in promotion, as well as adverse impact in aggregation of test passing

scores of Blacks towards bottom of the eligibility lists in nearly every promotional examination

given at JFRD for all times pertinent.

ii.      Plaintiffs are claiming the entire promotional process for each rank is seriously flawed

and discriminatory (as such, it is incapable for separation for analysis under Title VII), including

the facts that: 1) that the examinations used are not merit-based or job-related, as the test

questions and methods fail to assess a representative sample of the job domain for any given rank

and likewise fail to be job-related; 2) the exams are improperly administered, scored, and not

pilot-tested; 3) the exam results involve flawed and incomplete validation reports admittedly never reviewed by the City; 4) the testing process is not legally valid under the federal Uniform Guidelines or the requirements of the State and City laws and Charter; 5) it is not possible to base rank-ordered promotions on the examinations due to their lack of precision and inability to adequately test for predictable performance on the job; 6) the promotional processes have in this case, as well as historically, had an adverse impact towards African-Americans and persons of color; and 6) there are and have been existing, and admitted by the City, alternative measures available that would reduce adverse impact against blacks and other minorities while being equally if not more valid than the methods currently being used.

Further, Plaintiffs have anecdotal evidence that with respect to all tests in this suit, test question "banks" were collected and exchanged by at least some White firefighter candidates studying for the examinations but not shared with Black firefighter candidates, in violation of the examination confidentiality agreements with the testing consultant. In addition, to the pre-set, invalid and subjective aspects of JFRD's promotional system, this challenge is on those processes in their entirety, with focus on the invalidity of the examinations, and all aspects of them, as well as rank-ordering and the existence of alternative more valid measures under the Federal Uniform Guidelines (29 C.F.R. § 1670, et seq.).

iii.     Both JFRD and the Union have conspired and insisted on use of a promotional process known to have consistent adverse impact against uniformed firefighters of color for years, as well as JFRD having a judicially recognized and admitted history of anecdotal evidence of discrimination against African-Americans, thus establishing a pattern and practice of discrimination that is both statistically and anecdotally shown to be a violation under the Federal Uniform Guidelines for employment/promotional examinations.

6

## JURISDICTION

1.     This Court has original jurisdiction over all federal claims herein by virtue of 42 U.S.C. §§ 1983 and 1981; 42 U.S.C. § 2000e-2(a), (d), and (k); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. §1343(a).

2.     This Court has supplemental jurisdiction over all state claims herein by virtue of 28 U.S.C. § 1367.

3.     Plaintiffs of all ranks have requested right to sue notifications and several have already received their right to sue notifications, attached herein; remaining Plaintiffs are awaiting their Rights to Sue and will advise the Court when they have been received.

4.     All administrative charges were timely filed and were filed by each Plaintiff "individually and on behalf of [themselves] and all others similarly situated," thereby invoking the class nature of the allegations contained herein and preserving the individual claimaints' claims in this lawsuit separately and jointly.

## PARTIES

5.     Plaintiffs are all African- or Native-Americans currently employed by the City/JFRD, holding various ranks and denied promotions to the ranks of Engineer, Lieutenant Suppression, Captain Suppression, Captain Rescue, District Chief Suppression and District Chief Rescue.

6.     Defendant Consolidated City of Jacksonville ("City") is a municipal corporation, created pursuant to the State of Florida Constitution, which geographically encompasses almost all of Duval County and legally recognized as a "consolidated city," as permitted under the Florida Constitution and codified by the Florida State Legislature.

7.    Defendant City maintains a municipal fire department, Jacksonville Fire and Rescue Department ("JFRD").

8.    Defendant City is a "person" as defined by 42 U.S.C. § 2000e(a).

9.    Defendant City is an "employer" as defined by 42 U.S.C. 2000e-2(b) and the Florida statutes at issue in this case.

10.    Defendant City is a "respondent" as defined by 42 U.S.C. §§ 2000e(n) and 2000-e(a) and (k).

11.    Defendant City is a "state actor" as defined under the applicable constitutional laws.

12.    Defendant City receives federal funding specifically for employment and training purposes for JFRD uniformed personnel in the form of SAFER grants; as such, Defendant City is subject to suit under 42 U.S.C. § 2000d.

13.    Defendant Union is the certified bargaining agent for the uniformed firefighters of the JFRD up through the rank of District Chief.

14.    Defendant Union is a "person" as defined under 42 U.S.C. § 2000e(a).

15.    Defendant Union is a "labor organization" as defined 42 U.S.C. §§ 2000e(d) and (e) and Fla. Stat. § 760-10(3).

16.    Defendant Union qualifies as a "respondent who uses a particular employment practice" as defined under 42 U.S.C. §§ 2000e(n) and 2000e-2(c) and (k), and also is subject to liability under subsections (c)(1)(2) and (3) (discriminating and interfering with employment practices, helping to cause an employer to discriminate).

**BACKGROUND**

8

17. In 1968, the City was consolidated with Duval County pursuant to the Florida Constitution, Article VIII(3), and was given by both constitutional and statutory authority additional home rule powers not enjoyed by non-consolidated cities in the State of Florida.

18. The Consolidated City of Jacksonville ("City") is the lone consolidated city in Florida under Article VIII.

19. The City enjoys codified and stronger home rule rights not shared by other cities in the State of Florida.

20. The original Charter for the newly consolidated City was approved by the voters of Duval County in 1968 and was thereafter codified and enacted via statute by the Florida legislature that same year.

21. In 1974, Florida enacted chapter 447 of the Florida Statutes, which gave public employees the right to collectively bargain.

22. In 1992, the Florida legislature again approved, adopted and codified the Charter for the City, including Charter § 19.207.

23. Charter § 19.207 expressly prohibits promotions from being subject to collective bargaining.

24. The City's Charter also states that all personnel decisions relating to qualifications and certifying personnel for employment, promotion, demotion, transfer, dismissal and compensation solely on the basis of merit and qualification, without regard to race, color, political affiliation, sex, national origin or any other circumstances than merit and qualification.

25. The City has also enacted numerous ordinances prohibiting discrimination in employment, including Section 400.213, which requires that promotions shall be made in accordance with the Uniform Guidelines of Employee Selection (29 C.F.R. 1607, et seq.) and that any

selection device that has an adverse impact should not be used unless content, construct or criterion validation "can be clearly demonstrated."

26. City Ordinance 400.214 states that workplace discrimination shall be eliminated.

27. City Ordinance 400.215 prohibits the use of "non-merit factors" in making promotional decisions and that COJ shall maintain an eligible list that gives preference to any group on any basis other than merit.

28. The Florida Constitution and laws mandate that the City has a compelling state interest to protect and ensure that workplace discrimination in all its forms on the basis of race is prohibited and eliminated.

29. Florida Constitution Article I, § 2 mandates that all persons are equal before the law and have inalienable rights to pursue happiness and be rewarded for industry, and to acquire property, and that "[n]o person shall be deprived of any right because of race, religion, national origin, or physical disability."

30. The law mandates that the City has a compelling state interest in ensuring that promotions are made based solely upon a proper and validated merit system in accordance with its Charter and civil service rules promulgated thereunder.

31. The CBA promotional requirements conflict with and are superseded by the City Charter § 19.207.

32. The CBA promotional requirements conflict with and are superseded by Chapters 447 and 760 of the Florida Statutes.

33. The CBA promotional requirements conflict with and is superseded by Article III § 2 of the Florida Constitution.

34. The CBA promotional requirements conflict with are superseded by the Fourteenth Amendment of the United States Constitution, as well as 42 U.S.C. § 2000e, et seq. ("Title VII") under the Supremacy Clause.

35. Despite the express prohibition in the City Charter and all other applicable laws, the City and the Union have repeatedly engaged in collective bargaining regarding promotions in the JFRD, using the CBA as the device that defines the basis, structure, scoring and ordering of the promotional process at JFRD.

36. Florida Statute § 447.309(3) states that if any provision of a public employee collective bargaining agreement is in conflict of any law or ordinance over which the chief executive has no amendatory power, "[u]nless and until such amendment is enacted or adopted and becomes effective, the conflicting provision of the collective bargaining agreement shall not become effective."

37. The Mayor of the City of Jacksonville does not have amendatory power over the City Charter.

38. The Mayor of the City of Jacksonville does not have amendatory power over any Florida statute.

39. Florida Statute § 447.309(5) states that a public employee collective bargaining shall contain all terms and conditions relating to employment "except those terms and conditions provided for in applicable merit and civil service rules and regulations."

40. There is no provision of the State of Florida Constitution that identifies any mandatory collective bargaining agreement terms.

41. There is no provision under Florida Statutes Chapter 447 that identifies any mandatory collective bargaining agreement terms.

42.   Despite federal, state and local laws prohibiting discrimination in employment, the City has a long-standing and documented history of discrimination against African-American firefighters at JFRD, beginning in 1971, when the class action of *Coffey v. Braddy* , United States District Court for the Middle District of Florida Case No. 71-CV-44 was filed; prior to that time not a single professional firefighter in the City was Black.

43.   The *Coffey* case ended in a consent decree in 1971, which the City immediately violated; it was re-opened and slightly amended in 1981 to require one-for-one hiring until the percentage of Black firefighters at JFRD matched the percentage of African-Americans in the general population of the Consolidated City.

44.   Starting in 1981 through 1992, the City hired 235 Black firefighters under the decree.

45.   In 1991, the City walked away from the consent decree without leave of court or proof that it had met the decree requirements; for the next 5 years the City reverted to its original discriminatory behavior, hiring 137 White firefighters and a lone Black firefighter, with a continuing and steadfast dismal record of hiring.

46.   The *Coffey* case was successfully re-opened by federal court order in 2009, nearly 40 years after the original consent decree went into effect.

47.   In 2006 the City Human Rights Commission ("HRC"), a City Department created by Charter, undertook a study of the racial problems at JFRD after several incidents with nooses and other racially motivated issues occurred.

48.   The HRC report and recommendations to the Mayor found "a pervasive atmosphere of retaliation" at JFRD for complaining about race issues and that "[t]here is no clear distinction between management of the JFRD and the Union"; the HRC recommended, among numerous recommendations, that JFRD and the City "should implement an Assessment

Center [as part of the promotional exam process] and advised the Mayor to immediately remove and replace "the Director/Fire Chief, Deputy Director/Assistant Fire Chief the Human Resources/EEO Manager and the Compliance Officer," as well as various other recommendations including loosening Union control over both JFRD and City politics.

49.    The Mayor did not implement any of the recommendations as a result of the commissioned HRC Report.

50.    The City has been sued numerous times for discrimination in promotion over the course of two decades, including *Glenda Hopkins, et al. v. City of Jacksonville, et al.,* No. 3:00 CV 309-J-25 (case settled); and *Philip Hopkins v. City of Jacksonville*, M.D. Fla., No. 3:07-cv-147-J-32 (case pending); currently there are EEOC Commissioners Charges also pending against the City on generalized facial discriminatory claims against the promotional system.

51.    Per federal court order in April 2009, several parties, including the *Coffey* class plaintiffs, persons and entities with pending EEOC charges, the EEOC and the Department of Justice embarked on a court-ordered mediation with City, JFRD and Union officials that lasted roughly two years since the date of the order; this resulted in a resolution of hiring issues only under the *Coffey* consent decree class action; the other pending issues, including harassment and promotions, as well as the *Philip Hopkins* case, are unresolved.

52.    During the midst of these negotiations, in 2011 the City announced it was holding two more examinations under the flawed 100-question cognitive format because of CBA and Union requirements; the result is that the resulting lists will last for at least two years for the ranks of Lieutenant and Engineer – the two ranks consistently shown to have the highest level of adverse impact against Black firefighters, as shown *infra*.

53. The City currently employs approximately 1,250 firefighters, 241 of whom are Black and only 151 of whom are ranking officers, as shown *infra*.

54. Of the 151 ranking officers, 111 will be eligible for retirement this year, which will drastically reduce any meaningful opportunity for minorities to hold ranking positions at JFRD, as well as the number of Black firefighters in general.

55. The City's African-American population is currently 31 percent.

### PROMOTIONAL PROCESS

56. JFRD consists of various personnel, including uniformed firefighters; this lawsuit concerns firefighters seeking certain ranks and subject to JFRD's promotional process.

57. JFRD firefighters have rankings including Firefighter; Engineer; Lieutenant -Fire Suppression ("Suppression" or "Combat"); Lieutenant- Rescue; Captain-Suppression; Captain-Rescue; District Chief-Suppression; District Chief-Rescue; Battalion Chief; Deputy Chief.

58. At all times pertinent, all ranks are supposed to be decided via competitive promotional examinations except for Deputy Chiefs, which are appointed at the pleasure of the Mayor and are not required to pass any promotional examinations or even be in high-ranking positions when appointed.

59. Battalion Chiefs are designated on a per-shift basis by JFRD officials, and have achieved the rank of District Chief via promotional examination.

60. All positions, with the exception of Deputy Chief are automatically subject to the CBA to the bargaining unit negotiated between the City and the Union, regardless of whether they are Union members.

61.   The Mayor and/or City officials retain the right to create firefighter positions outside of the promotion process, including temporary, provisional or relief positions.

62.   Participating in the promotional process is voluntary and is not required as a term or condition of employment with JFRD.

63.   Since the 1980s, the City and Union have agreed upon CBAs that largely dictate the JFRD's promotional process, including requiring an outside consultant, written format, cut-off score, set seniority points, and rank-ordered promotion.

64.   The City is not required to engage in the collective bargaining process on any term of promotion, including substantive terms; the terms are voluntarily entered into.

65.   The Union is not required to engage in the collective bargaining process on any term of promotion, including substantive terms; the terms are voluntarily entered into.

66.   During the pendency of mediation on promotional issues from April 2009 through the present, the City has held promotional examinations under the tainted process and refused to halt them until the conclusion of negotiations, despite the availability of alternative means of staffing.

67.   During the pendency of mediation on promotional issues, in January 2011, the Defendants negotiated a new CBA in which the substantive promotional requirements remained virtually unchanged, despite protests and correspondence from JFRD employees/bargaining unit members that the CBA terms being negotiated with respect to promotion violated the applicable laws and caused adverse impact against Black and Native American uniformed personnel at JFRD.

68.   The current CBA shall remain in effect for at least one year from the date executed and/or adopted.

69.     At all times pertinent, the City utilized the same testing agency, Barrett and Associates of Ohio, since at least 1995 for all of its internal JFRD promotional examinations.

70.     At all times pertinent, the City entered into serial contractual agreements with Barrett & Associates, each spanning three years, during which time the City did not contract with or consult with any outside tester.

71.     The CBA-dictated promotional processes have failed and continue to fail to meet the requirements of Title VII and the Uniform Guidelines, as well as violated the City's Charter.

72.     At all times pertinent, Defendant City has had no expertise in high-stakes employment promotional testing and retained no qualified Industrial Organizational psychologist as a City employee.

73.     At all times pertinent, the City did not review any alleged consultant's reports of Barrett and Associates on its JFRD promotional examinations.

74.     The City at all times pertinent has not done any validity or statistical analyses independently of the outside consultant's final report of JFRD promotional test outcomes.

75.     Defendant Union has no expertise in high-stakes employment promotional testing.

76.     No authorized representative or member of the Union has received any training or possesses any expertise or qualifications relating to statistical analysis as it relates to testing or evaluation of test results.

77.     Since at least 1992, the format of all promotional examinations used in the City's and promotional process has been identical a 100-question multiple-choice job knowledge test; all other types of testing (e.g., oral or assessment centers) are expressly precluded by the CBA, mutually agreed upon by both Defendants at all times pertinent.

78. Under the CBAs in the past and present, after the multiple-choice examinations are scored, seniority points are added to each candidates score to result in a final score; an eligibility list of candidates is then certified, rank-ordered in descending order starting with the highest score; candidates for vacancies in any given rank are then selected using a "rule of one," a top-down, rank-order selection method.

79. Eligibility lists are supposed to remain in effect for 2 years from the date of certification; however, it is undisputed that the City of Jacksonville has amended eligibility lists to add candidates (e.g., military personnel) or change the order of the candidates, essentially recertifying the lists, without altering the original expiration date of the eligibility list.

80. The written multiple-choice promotional examinations are not validly representative of the actual job duties or conditions of the given ranks at issue for which they are used.

81. The written promotional examinations do not test for a representative sample of the knowledge, skills and abilities that are necessary for the given ranks at issue for which they are used.

82. Because of the numerous inherent deficiencies and defects with the promotional examination portion of the promotional process, the examinations at issue cannot be validated under any validation strategy.

83. The promotional examinations are neither precise nor valid enough to justify rank-ordering of candidates.

84. Since at least 1994, the promotional process has had a facially adverse impact on Blacks and Native-Americans in JFRD that is statistically significant or violates the Uniform Guidelines.

85. Since at least 1994, the promotional process has resulted in an aggregation of passing test scores of Black candidates towards the bottom mean of the promotional eligibility list as

compared with the passing scores of White candidates, the disparity of which is statistically significant; combined with rank ordering, this has resulted in severe underrepresentation of Black firefighters in JFRD in all ranking officer positions.

86.   Due to impending retirements of the few Black officers hired in the late 1980s and early 1990s, JFRD will be even more underrepresented by Black officers within the next few years.

87.   There are alternative promotional processes that are equally valid if not more so that have less adverse impact than those used by the Defendants.

88.   JFRD officers who also were Union officials collected and shared test questions from Barrett and Associates examinations of various ranks with selected White promotional candidates and did not share them with Black candidates.

89.   The promotional process at all times pertinent was corrupted by the use of "test bank" questions collected by and shared between selected White candidates and Union officials.

90.   At all times pertinent, both the Union and the City have refused to alter the promotional process dictated by former CBAs.

91.   The City has been aware that the JFRD promotional process causes and has caused disparate impact against Blacks subject to the promotional system.

92.   The City has been aware of alternative testing procedures and promotional processes that cause less adverse impact against Blacks and Native-Americans, but has refused to implement them.

93.   The Union is aware that the CBA's requirement of rank-ordering and written examinations and exclusion of assessment centers or other alternative means of promotional testing causes an adverse impact against Blacks at JFRD.

94.    At all times pertinent, the Union has refused to collectively bargain a different promotional
       process, exerting excessive political influence over City and JFRD officials.

95.    Unlike the JFRD CBA, the CBA between the City and the Jacksonville Consolidated Lodge
       No. 5-30 of the Fraternal Order of Police ("FOP"), which represents the uniformed personnel
       of the Jacksonville Sheriff's Office, defers to civil service rules and regulations for
       promotions.

96.    Unlike the JFRD, the examinations of the City's Sheriff's Office involve assessment centers.

97.    The current CBA for JFRD has been in effect since 2011; that CBA was negotiated by and
       between the Defendants after charges alleging race discrimination in the promotional process
       were filed with the Equal Employment Opportunity Commission against both Parties and
       after litigation was filed against the City making similar allegations, and despite knowing the
       CBA terms were at issue.

98.    Documents obtained from the City in March 2011 (attached as Exhibits 1 and 2), and
       establish a prima facie case of disparate impact in promotions against Blacks at each
       challenged rank, with impact percentages shown *infra*.


**PROMOTIONAL RANKS: ENGINEER**

99.    Engineer is the first officer rank in chain of progression within JFRD; it is more a status than
       a commanding rank, with higher pay, but few, if any, additional command responsibilities
       than that of firefighter/private.

100.   Promotion to Engineer is the lone stepping stone for future promotional processes at JFRD,
       the only possible way for JFRD uniformed personnel to qualify to participate in future
       promotional processes for the rank of Lieutenant and above.

101. Upon promotion, a candidate receives an immediate pay increase of 15%, plus the additional responsibilities and privileges of holding an officer's rank.

102. Holding an Engineer's position allows a firefighter to be considered for staff and other assignments within JFRD that they would not be considered as a firefighter/Private.

103. Named Plaintiffs Winston Judge, Marcel White, Francine LaFavor, Damian Bell, Marvin Wilson, Johnny Buchanan, Timothy Norris, and Roderick Spann are all African-Americans employed by JFRD as Firefighters/Privates; Named Plaintiff Marck Narcho is a Native-American and is employed by JFRD as a Firefighter/Private. ("Engineer Candidates").

104. Engineer Candidates all participated in the promotional process for the rank of Engineer that included the promotional examination administered on May 19, 2008.

105. The eligibility list for the Engineer position was certified on July 25, 2008.

106. The eligibility list for the Engineer position expired July 24, 2010, with all promotions having been completed and the exams used during this period to fill Engineer positions.

107. At total of 300 Engineer Candidates took the promotional 2008 test, of which 46 were Black and 244 were White.

108. Of the candidates who took the promotional examination, 277 candidates passed the promotional examination.

109. Of the candidates who passed the examination, 38 were African-American.

110. Of the Black Engineer Candidates who passed the promotional examination, only 6 were promoted for a selection ratio of 13.0 percent.

111. Of the White Engineer Candidates who passed the promotional examination, 83 were promoted for a selection ratio of 34.7 percent.

112. The 2008 Engineer examination impact ratio is 38.29 percent, which is far less than the 4/5s Rule selection rate, as contained in the Uniform Guidelines on Employee Selection, 29 C.F.R. 1607, et seq.

113. The examination results, combined with the eligibility lists certified and used by the City to promote, also show that the scores of the Black Engineer Candidates were disproportionately congregated near the bottom quartile of the eligibility list of passing candidates.

**LIEUTENANT - SUPPRESSION**

114. Lieutenant is the rank immediately above the Engineer in JFRD.

115. Promotion is the only possible way for JFRD Lieutenant to qualify to participate in future promotional processes for Captain.

116. Upon promotion, a candidate receives an immediate pay increase of 15%, plus the additional responsibilities and privileges of holding an officer's rank, such as acting out of class at the rank of Captain.

117. Holding a Lieutenant – Suppression position allows a firefighter to be considered for staff and other assignments within JFRD that he or she would not be considered as a Lieutenant Rescue.

118. Named Plaintiffs Rufus Smith, Douglas Abdul-Haqq, Roderick Laws, Perman Hagans, Prudencia Fraysavage, James McKinney, Timothy Bynum, Anthony Ragans, Antonio Pate and Antonio Porter, are all Blacks employed by JFRD as Engineers. ("Lieutenant-Suppression Candidates").

119. All Lieutenant-Suppression Candidate Named Plaintiffs, except Antonio Porter, participated in the promotional process for Lieutenant Suppression that included the promotional examination administered on May 31, 2007.[1]

120. The eligibility list for the Lieutenant - Suppression position was certified on August 6, 2007.

121. The eligibility list for the Lieutenant - Suppression position expired August 5, 2009.

122. At total of 239 Lieutenant Candidates took the promotional test, of which 48 were Black and 160 were White.

123. Of the candidates who took the promotional examination, 160 candidates passed the promotional examination.

124. Of the candidates who passed the examination, 18 were Black.

125. Of the Black Lieutenant Candidates who passed the 2007 promotional examination, only 1was promoted for a selection ratio of 2.1 percent.

126. Of the White Lieutenant Candidates who passed the promotional examination, 27 were promoted for a selection ratio of 15.1 percent.

127. The selection impact ratio is 13.94 percent, which is far less than the 4/5s Rule as contained in the Uniform Guidelines on Employee Selection, 29 C.F.R. 1607, et seq.

128. The examination results, combined with the eligibility lists certified and used by the City to promote, also show that the scores of the Black Lieutenant-Suppression Candidates were disproportionately congregated near the bottom quartile of the eligibility list of passing candidates.

---

[1] Named Plaintiff Porter is signed up to take the Lieutenant – Suppression test scheduled for April 15, 2011

## CAPTAIN - SUPPRESSION

129. Captain-Suppression is one of two Captain positions immediately above the rank of Engineer.

130. Promotion is the only possible way for a JFRD Captain to qualify to participate in future promotional processes for the rank of District Chief.

131. Upon promotion, a candidate receives an immediate pay increase of 15%, plus the additional responsibilities and privileges of holding an officer's rank, such as acting out of class at the rank of District Chief.

132. Holding a Captain – Suppression position allows a firefighter to be considered for staff and other assignments within JFRD that they would not be considered for as a Lieutenant-Suppression.

133. Named Plaintiff Robert Hickson is Black, employed by JFRD as  Lieutenant – Suppression. ("Captain – Suppression Plaintiffs").

134.  Named Captain – Suppression Plaintiff participated in the promotional process for Captain - Suppression that included the promotional examination administered on December 11, 2008.

135. The eligibility list for the Captain - Suppression position was certified on February 6, 2009.

136. The eligibility list for the Captain - Suppression position expired February 5, 2011.

137. At total of 92 candidates took the Captain-Suppression promotional test, of which 17 were Black and 73 were White.

138. Of the candidates who took the promotional examination, 80 candidates passed the promotional examination.

139. Of the candidates who passed the examination, 11 were Black.

140.    Of the Black Lieutenant-Suppression Candidates who passed the promotional examination, no Blacks were promoted, for a selection ratio of 0 percent.

141.    Of the White candidates who passed the promotional examination, 20 were promoted for a selection ratio of 22.47 percent.

142.    The impact ratio is 0 percent, which is far less than the 4/5s Rule as contained in the Uniform Guidelines on Employee Selection, 29 C.F.R. 1607, et seq.

143.    The examination results, combined with the eligibility lists certified and used by the City to promote, also show that the scores of the Black Captain-Suppression Candidates were disproportionately congregated near the bottom of the results.


**CAPTAIN - RESCUE**

144.    Promotion is the only possible way for a JFRD Captain to qualify for participation in future promotional processes for the rank of District Chief.

145.    Upon promotion, a candidate receives an immediate pay increase of 15%, plus the additional responsibilities and privileges of holding an officer's rank, such as acting out of class at the rank of District Chief and being paid at a higher rate of pay while on acting time.

146.    Holding a Captain – Rescue position allows a firefighter to be considered for staff and other assignments within JFRD that they would not be considered as a Lieutenant.

147.    Named Plaintiff Rickey Adams is Black, employed by JFRD as a Lieutenant – Suppression. ("Captain – Rescue Candidate Plaintiffs")

148.    Captain – Rescue Plaintiffs all participated in the promotional process for Captain - Rescue that included the promotional examination administered on September 29, 2008.

149.    The eligibility list for the Captain - Rescue position was certified on October 17, 2008.

150.    The eligibility list for the Captain - Rescue position expired October 16, 2010.

151.    At total of 51 Captain-Rescue candidates took the promotional test, of which 9 were Black and 41 were white.

152.    Of the candidates who took the promotional examination, 41 candidates passed the promotional examination.

153.    Of the candidates who passed the examination, 6 were Black.

154.    Of the Black candidates who passed the promotional examination, none were promoted for a selection ratio of 0 percent.

155.    Of the white candidates who passed the promotional examination, 5 were promoted for a selection ratio of 34.1 percent.

156.    The impact ratio is 0 percent which is far less than the 4/5s Rule as contained in the Uniform Guidelines on Employee Selection, 29, C.F.R. 1607, et seq.

157.    The examination results, combined with the eligibility lists certified and used by the City to promote, also show that the scores of the Black Captain-Rescue Candidates were disproportionately congregated near the bottom of the examination results.


**DISTRICT CHIEF - SUPPRESSION**

158.    Promotion is the only possible way for a JFRD District Chief to qualify to be capable of being appointed to a Deputy Chief position or as a Battalion Chief .

159.    Upon promotion, a District Chief candidate receives an immediate pay increase of 15%, plus the additional responsibilities and privileges of holding an officer's rank.

160.    Holding a District Chief - Suppression position allows a firefighter to be considered for staff and other assignments within JFRD that they would not be considered as a Captain.

161.   Named Plaintiff Brian Ragin is a Black Captain-Suppression, employed by JFRD.

162.   Named Plaintiff Ragin participated in the promotional process for District Chief - Suppression that included the promotional examination administered on April 25, 2006.

163.   The eligibility list for the District Chief - Suppression position was certified on June 3, 2006, and amended, altering the position ranking, on December 29, 2006.

164.   JFRD considered the eligibility list to have expired on June 2, 2008.

165.   The eligibility list for the District Chief - Suppression position should have expired 2 years after the date of amendment, or December 28, 2008.

166.   At total of 53 candidates took the promotional test, of which 10 were Black and 43 were White.

167.   Of the candidates who took the promotional examination, 46 candidates passed the promotional examination.

168.   Of the District Chief-Suppression candidates who passed the examination, 8 were Black.

169.   Of the Black candidates who passed the promotional examination, none were promoted for a selection ratio of 0 percent.

170.   Of the white candidates who passed the promotional examination, 12 were promoted for a selection ratio of 25.89 percent.

171.   The impact ratio is  0 percent, which is far less than the 4/5s Rule as contained in the Uniform Guidelines on Employee Selection, 29 C.F.R. 1607, et seq.

172.   The examination results, combined with the eligibility lists certified and used by the City to promote,  also show that the scores of the Black District Chief-Suppression candidates were disproportionately congregated near the bottom of the examination results.

## DISTRICT CHIEF - RESCUE

173. Upon promotion, a candidate receives an immediate pay increase of 15%, plus the additional responsibilities and privileges of holding an officer's rank.

174. Holding a District Chief - Rescue position allows a firefighter to be considered for staff and other assignments within JFRD that they would not be considered as a Captain.

175. Uniform Guidelines on Employee Selection, 29, C.F.R. 1607, et seq.

176. Named Plaintiff Dwight Williams and Johnny Battle are Black officers, employed by JFRD as a Captain – Rescue. ("District Chief – Rescue Plaintiffs").

177. District Chief – Rescue Plaintiffs all participated in the promotional process for District Chief - Rescue that included the promotional examination administered on June 2, 2008.

178. The eligibility list for the District Chief - Rescue position was certified on June 10, 2008.

179. The eligibility list for the District Chief - Rescue position expired 2 years after the date of certification, or June 9, 2010.

180. At total of 27 candidates took the promotional test, of which 8 were Black and 19 were White.

181. Of the candidates who took the promotional examination, 20 candidates passed the promotional examination.

182. Of the candidates who passed the examination, 6 were Black.

183. Of the Black candidates who passed the promotional examination, 0 were promoted for a selection ratio of 0 percent.

184. Of the white candidates who passed the promotional examination, 3 were promoted for a selection ratio of 26.37 percent.

185. The impact ratio is 0 percent, which is far less than the 4/5s Rule as contained in the Uniform Guidelines on Employee Selection, 29 C.F.R. 1607, et seq.

186. Promotion is the only possible way for a JFRD District Chief to qualify to be capable of being appointed to a Deputy Chief position or as a Battalion Chief.

187. The examination results, combined with the eligibility lists certified and used by the City to promote, also show that the scores of the Black District Chief-Rescue Candidates were disproportionately congregated near the bottom of the results.

## DAMAGES AND IRREPARABLE INJURY

188. By virtue of Defendants' acts and omissions, jointly and severally, relating to the promotional process used for each officer rank of JFRD, Plaintiffs have been denied promotions to which they were entitled.

189. By virtue of Defendants' acts and omissions, jointly and severally, relating to the promotional process used for each officer rank of JFRD, Plaintiffs have suffered damages in terms of loss of Back Pay and in-grade seniority, and loss of compensation from the date of verdict forward (Front Pay).

190. By virtue of Defendants' acts and omissions, jointly and severally, Plaintiffs have each suffered damages in terms of emotional distress, humiliation, embarrassment, loss of companionship and respect, and general loss of enjoyment of life by being subjected to a non-merit-based and discriminatory promotional process that has precluded them from advancing their careers based upon their actual capabilities and performance as officers within JFRD.

191.   By virtue of Defendants' acts and omissions, jointly and severally, Plaintiffs will continue to suffer damages in terms of loss of compensation and advancement of career, as well as emotional distress, if the City of Jacksonville continues to use the same promotional process as it has over the past few decades.

192.   By virtue of Defendants' acts and omissions, jointly and severally, Plaintiffs will continue to suffer damages in terms of loss of compensation and advancement of career, as well as emotional distress, if the City of Jacksonville continues to include promotions as part of the collective bargaining agreement between the City and the Union, in essence giving the Union power and ability to affect their livelihoods and career by maintaining an ineffective and non-merit-based promotional process that has a demonstrated discriminatory effect towards blacks and African-Americans.

193.   By virtue of Defendants' acts and omissions, jointly and severally, Plaintiffs have suffered and will suffer irreparable harm by being denied promotions to officer ranks within JFRD in that they have been denied future advancement opportunities, ability to act at more senior ranks, and other rights and privileges attendant with the officer ranks of JFRD for which there is no adequate remedy at law.

194.   By virtue of Defendants' acts and omissions, jointly and severally, Plaintiffs have suffered and will continue to suffer the loss of representation, especially in ranking positions, at JFRD.

### *FEDERAL CLAIMS AGAINST THE CITY OF JACKSONVILLE*

**COUNT I**
**Equal Protection based on Race, Color, against the Consolidated City of Jacksonville under 42. U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.**

195.   Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

196.   Defendant City of Jacksonville has pursued and continues to pursue policies and practices known to discriminate against Blacks and that deprive or tend to deprive Blacks and Native Americans of employment opportunities because of their race.

197.   Defendant City of Jacksonville has furthered these discriminatory effects in other ways, including by:

a.   consistently and continually persisting in negotiating CBAs with unlawful, non-merit-based controls of the Union over the municipal promotional process with known adverse effects on Blacks and Native Americans;

b.   failing or refusing to promote Blacks on the same bases as Whites through a valid competitive process;

c.   consistently using written, cognitive examinations known to have adverse impact on Blacks and Native Americans, including the development, administration, implementation, scoring, and generation of eligibility lists, despite the availability of alternative and equally valid measures shown to have less adverse impact;

d.   certification of the eligibility lists without proper validation procedures of the examination process;

e.   rank-order promotion from the eligibility lists, despite the lack of job-relatedness and inconsistency with business necessity;

f.   failing or refusing to take proper action to correct the present effects of its discriminatory policies and practices; and

g. failing or refusing to "make whole" those Black and Native American applicants and candidates for promotion at JFRD who have been harmed by the policies and unlawful use of the promotional results.

198. Defendant City of Jacksonville's policies and practices are its standard operating procedure and constitute violations of 42 U.S.C. § 1983, equal protection, based upon race under the 14th Amendment of the United States Constitution.

## COUNT II
### Race Discrimination, Disparate Treatment, Pattern and Practice against the Consolidated City of Jacksonville Title VII, 42 U.S.C. 2000e-2, et seq.

199. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

200. The statistical disparities, as well as the available anecdotal evidence and history of discrimination at JFRD suffice to establish that such discriminatory practices were the City's standard operating procedure and that the City was aware of the disparities, as well as the compromised tests.

201. Defendant City of Jacksonville has pursued and continues to pursue policies and practices known to discriminate against Blacks and that deprive or tend to deprive Blacks and Native Americans of employment opportunities because of their race.

202. Defendant City of Jacksonville has furthered these discriminatory effects in other ways, including by:

a. consistently and continually persisting in negotiating CBAs with unlawful, non-merit-based controls of the Union over the municipal promotional process with known adverse effects on Blacks and Native Americans;

31

b.  failing or refusing to promote Blacks on the same bases as Whites through a valid competitive process;

c.  consistently using written, cognitive examinations known to have adverse impact on Blacks and Native Americans, including the development, administration, implementation, scoring, and generation of eligibility lists, despite the availability of alternative and equally valid measures shown to have less adverse impact;

d.  certification of the eligibility lists without proper validation procedures of the examination process;

e.  rank-order promotion from the eligibility lists, despite the lack of job-relatedness and inconsistency with business necessity;

f.  failing or refusing to take proper action to correct the past and present effects of its discriminatory policies and practices;

g.  planning continuation of such practices in future examinations already scheduled, despite its awareness of their adverse impact; and

h.  failing or refusing to "make whole" those Black and Native American applicants and candidates for promotion at JFRD who have been harmed by the policies and unlawful use of the promotional results.

203.  Defendant City of Jacksonville's policies and practices are its standard operating procedure and constitute violations of Title VII, 42 U.S.C. § 2000e-2(b), et seq. based upon race discrimination in employment.

## COUNT III
### Race Discrimination, Disparate Impact against the Consolidated City of Jacksonville
### Title VII, 42 U.S.C. 2000e-2(a) and (k)

204. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

205. Plaintiffs have established a prima facie case of disparate impact discrimination against Defendant/Respondent City as set forth under the federal Uniform Guidelines of Employee Selection, C.F.R. 1607, et seq.

206. The JFRD promotional process is so intertwined that the various elements cannot be separated and must be analyzed as a whole and include, but is not limited to:

a. use of CBAs with unlawful, non-merit-based and non-job-related requirements for promotion;

b. failure to keep secure its testing and studying mechanisms prior to and after promotional examinations;

c. development, administration, implementation, and scoring of multiple-choice, 100-question examinations, to the exclusion of all other testing measures, which are not job-related or properly validated in all aspects of development and use;

d. using and implementing a cognitive examination process despite the existence of processes of at least equal or more validity that have less adverse impact on Blacks and Native Americans on both scores and promotional rates;

e. generation of eligibility lists, without determining the validity and job-relatedness of the examination process;

f. certification of the eligibility lists without proper validation procedures of the examination process; and

33

g. rank-ordering of promotions from the certified eligibility lists, despite the lack of job-relatedness and inconsistency with business necessity, and despite the existence of promotional ranking systems known to have less adverse impact and be at least equally if not greater in validity .

207. The City cannot meet its burden of proving that the JFRD's promotional process is job-related and consistent with business necessity.

208. By virtue of the City's actions that have a demonstrated adverse impact towards Black firefighters in all officer ranks in JFRD, the City's actions constitute race discrimination in employment, disparate impact, in violation of 42 U.S.C. § 2000e-2(a) and (k), Title VII.

## COUNT IV
### Conspiracy by the City and the Union to Interfere with Civil Rights
### 42 U.S.C. §§ 1985, 1343(a)

209. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

210. Defendants City and Union, by continuing to negotiate, adhere to and maintain over numerous years a promotional process that has had a demonstrated ongoing and repeated adverse impact towards Blacks and Native Americans, have conspired to deprive Plaintiffs of their equal rights, privileges, terms and benefits of employment under the law.

211. Defendants' concerted actions constitute conspiracy to deprive Plaintiffs of their civil rights in violation of 42 U.S.C. §§ 1985 and 1343(a).

## *FEDERAL CLAIMS AGAINST THE UNION, LOCAL 122*

### COUNT V
### Race Discrimination - Disparate Treatment, Pattern and Practice against Jacksonville
### Assn. of Firefighters,

**Local 122, IAFF**
**Title VII, 42 U.S.C. 2000e-2**

212. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

213. Defendant Union, Local 122, has pursued and continues to pursue policies and practices known to discriminate against Blacks and that deprive or tend to deprive Blacks and Native Americans of employment opportunities because of their race.

214. Defendant Union has failed to properly represent and give equal opportunities to Black and Native American bargaining unit members and furthering discrimination in promotion in the JFRD, by, among other things:

a. consistently persisting in negotiating CBAs with unlawful, non-merit-based controls of the Union over the municipal promotional process with known adverse effects on Blacks and Native Americans;

c. insisting on written, cognitive examinations known to the Union to have adverse impact on Blacks and Native Americans, to the exclusion of all other testing devices and the availability of alternative and equally valid measures shown to have less adverse impact on Blacks and Native Americans;

d. bargaining for and insisting on employment of such and similar tests despite awareness of "test banks" and "weighting the test" practices by JFRD officers and Union officials that worked to the advantage of White candidates and the detriment of Black and Native American candidates;

e. knowingly and consistently engaging in collective bargaining that contains unlawful provisions with respect to promotion and the promotional process;

f. insisting upon rank-ordered promotions from the eligibility lists, despite the lack of job-relatedness and inconsistency with business necessity of the written examinations;

g. interfering with the City's and JFRD's ability to implement and conduct employment practices with respect to promotion that would result in equally or more valid processes with lesser adverse impact on Blacks and Native Americans; and

g. failing or refusing to take proper action to correct the past and present effects of its discriminatory policies and practices to its members who are Black and Native American; and

h. deliberately planning and insisting on continuation of such practices in future examinations already scheduled, despite its awareness of their adverse impact.

215. The Union cannot meet its burden of proving that the CBA-controlled aspects of JFRD's promotional process are job-related and consistent with business necessity.

216. The Plaintiffs can establish that there exist alternative measures equally or more valid that have a lesser adverse impact on Black and Native American promotional candidates at JFRD.

217. By exerting undue control and influence over the JFRD high-stakes promotional process, including requirement of written examinations to the exclusion of all others, randomly set cut-off scores, straight rank-ordering of promotions, and gaining access to exam questions and study materials and formats in the course of the promotional process, Defendant/Respondent Union's actions are intended at least in part to cause adverse impact against Blacks and Native Americans and constitute disparate impact race discrimination, in violation of 42 U.S.C. § 2000e-2(d), (e) and (k), Title VII.

## COUNT VI
### Race Discrimination, Disparate Impact, Against Defendant Union, Local 122
### Title VII, 42 U.S.C. § 2000e, et seq.

218. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

219. Defendant Union has failed to properly represent and give equal opportunities to Black and Native American bargaining unit members and furthering discrimination in promotion in the JFRD, by, among other things:

   a. consistently and continually persisting in negotiating CBAs with facially neutral policies that have an adverse and discriminatory effect on Blacks and Native Americans;

   b. imposing the requirement of written, cognitive promotional examinations, to the exclusion of all other methods for promotional examinations;

c. imposing a seniority point system that has an adverse impact and perpetuates such impact on Black and Native American candidates delayed promotions and thus seniority because of Union control over the testing format;

   d. imposing the use of an arbitrarily-set cut-off score;

   e. requiring rank-ordering on certified eligibility lists and rank-ordered promotions, that directly causes an adverse impact on Black and Native Americans in combination with the other factors herein; and

   f. negotiating and insisting upon a CBA with an embedded promotional process that overall contributes and/or causes adverse impact against Blacks and Native Americans.

220. Plaintiffs have established a prima facie case of disparate impact discrimination against Defendant/Respondent Union as set forth under the federal Uniform Guidelines of Employee Selection, C.F.R. 1607, et seq.

221. The Union cannot meet its burden of proving that the CBA-controlled aspects of JFRD's promotional process are job-related and consistent with business necessity.

222.  The Plaintiffs can establish that there exist alternative measures equally or more valid that have a lesser adverse impact on Black and Native American promotional candidates at JFRD.

223.  By exerting undue control and influence over the JFRD high-stakes promotional process, including requirement of written examinations to the exclusion of all others, randomly set cut-off scores, straight rank-ordering of promotions, and gaining access to exam questions and study materials and formats in the course of the promotional process, Defendant/Respondent Union is in violation of the prohibition against disparate impact in Title VII 42 U.S.C. § 2000e(k).

## COUNT VII
### Race Discrimination in Contract and Interference with Civil Rights against the Union 42 U.S.C. § 1981

224.  Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

225.  Defendant Union has intentionally discriminated against Plaintiffs by interfering with the right of Plaintiffs to make and hold contracts and be free from outside impediments with respect to their employment with the City, which has interfered with and usurped their rights to be free of discrimination based on race in employment.

226.  Defendant Union has intentional ignored Plaintiffs' complaints as to the legitimacy of the bargaining process, and also made clear its discriminatory effects.

227.  Defendant Union's refusal to acknowledge the discrimination against Plaintiffs, signing a CBA that discriminates against Plaintiffs, and adhering to a promotional process that it knows or should have known to have a discriminatory impact on Blacks and Native Americans constitutes race discrimination in formation or performance of a contract, in violation of 42 U.S.C. 1981.

## COUNT VIII
### Conspiracy by the City and the Union to Interfere with Civil Rights
### 42 U.S.C. §§ 1985, 1343(a)

228.   Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

229.   Defendants City and Union, by continuing to negotiate, adhere to and maintain over numerous years a promotional process that has had a demonstrated ongoing and repeated adverse impact towards Blacks and Native Americans, have conspired to deprive Plaintiffs of their equal rights, privileges, terms and benefits of employment under the law.

230.   Defendants' concerted actions constitute conspiracy to deprive Plaintiffs of their civil rights in violation of 42 U.S.C. §§ 1985 and 1343(a).

## _FLORIDA STATE CLAIMS AGAINST THE CITY OF JACKSONVILLE_

### COUNT IX
### Equal Protection based on Race against the Consolidated City of Jacksonville under
### Article I, § 2 of the Florida Constitution

231.   Named Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

232.   Defendant City of Jacksonville has pursued and continues to pursue policies and practices known to discriminate against Blacks and that deprive or tend to deprive Blacks and Native Americans of employment opportunities because of their race.

233.   Defendant City of Jacksonville has furthered these discriminatory effects in other ways, including by:

a.  consistently and continually persisting in negotiating CBAs with unlawful, non-merit-based controls of the Union over the municipal promotional process with known adverse effects on Blacks and Native Americans;

b.  failing or refusing to promote Blacks on the same basis as Whites through a valid competitive process;

c.  consistently using written, cognitive examinations known to have adverse impact on Blacks and Native Americans, including the development, administration, implementation, scoring, and generation of eligibility lists, despite the availability of alternative and equally valid measures shown to have less adverse impact;

d.  employment of such and similar tests despite awareness of "test banks" and "weighting the test" practices by JFRD officers and Union officials that worked to the advantage of White candidates and the detriment of Black and Native American candidates;

e.  certification of the eligibility lists without proper validation procedures of the examination process as a whole;

f.  rank-order promotion from the eligibility lists, despite the lack of job-relatedness and inconsistency with business necessity;

g.  failing or refusing to take proper action to correct the present effects of its discriminatory policies and practices; and

h.  failing or refusing to "make whole" those Black and Native American applicants and candidates for promotion at JFRD who have been harmed by the policies and unlawful use of the promotional results.

234.  Defendant City of Jacksonville's policies and practices constitute violations of Article I, § 2 of the Constitution of the State of Florida and equal protection.

**COUNT X**
**Race Discrimination, Pattern and Practice against Defendant**
**Consolidated City of Jacksonville**
**Florida Statute § 760.10**

235.   Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through

194 of this Complaint as if fully rewritten herein.

236.   The statistical disparities, as well as the available anecdotal evidence and history of

discrimination at JFRD suffice to establish that such discriminatory practices were the City's

standard operating procedure and that the City was aware of the disparities, as well as the

compromised tests.

237.   Defendant City of Jacksonville has pursued and continues to pursue policies and practices

known to discriminate against Blacks and that deprive or tend to deprive Blacks and Native

Americans of employment opportunities because of their race.

238.   Defendant City of Jacksonville has furthered these discriminatory effects in other ways,

including by:

a.   consistently and continually persisting in negotiating CBAs with unlawful, non-merit-

based controls of the Union over the municipal promotional process with known adverse

effects on Blacks and Native Americans;

b.   failing or refusing to promote Blacks on the same basis as Whites through a valid

competitive process;

c.   consistently using written, cognitive examinations known to have adverse impact on

Blacks and Native Americans, including the development, administration, implementation,

scoring, and generation of eligibility lists, despite the availability of alternative and equally

valid measures shown to have less adverse impact;

d. certification of the eligibility lists without proper validation procedures of the examination process;

e. rank-order promotion from the eligibility lists, despite the lack of job-relatedness and inconsistency with business necessity;

f. failing or refusing to take proper action to correct the present effects of its discriminatory policies and practices; and

g. failing or refusing to "make whole" those Black and Native American applicants and candidates for promotion at JFRD who have been harmed by the policies and unlawful use of the promotional results.

239. Defendant City of Jacksonville's policies and practices are its standard operating procedure and constitute violations of disparate treatment prohibitions of section 760.10 of the Florida Statutes.

240. The City's continuing and deliberate requirement, administration, and use of promotional examinations and a promotional process over numerous years that have consistently resulted in disparate impact against Blacks and Native Americans constitutes race discrimination in employment, disparate treatment, in violation of Florida Statute § 760.10.

**COUNT XI**
**Race Discrimination, Disparate Impact against the Consolidated City of Jacksonville**
**Title VII, 42 U.S.C. 2000e-2(a) and (k)**

241. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

242. Plaintiffs have established a prima facie case of disparate impact discrimination against Defendant/Respondent City as set forth under the federal Uniform Guidelines of Employee Selection, C.F.R. 1607, et seq.

243.  The JFRD promotional process is so intertwined that the various elements cannot be

separated and must be analyzed as a whole and include, but is not limited to:

a.  use of CBAs with unlawful, non-merit-based and non-job-related requirements for

promotion;

b.  failure to keep secure its testing and studying mechanisms prior to and after promotional

examinations;

c.  development, administration, implementation, and scoring of multiple-choice, 100-

question examinations, to the exclusion of all other testing measures, which are not job-

related or properly validated in all aspects of development and use;

d.  using and implementing a cognitive examination process despite the existence of

processes of at least equal or more validity that have less adverse impact on Blacks and

Native Americans  on both scores and promotional rates;

e.  generation of eligibility lists, without determining the validity and job-relatedness of the

examination process;

f.  certification of the eligibility lists without proper validation procedures of the

examination process; and

g.  rank-ordering of promotions from the certified eligibility lists, despite the lack of job-

relatedness and inconsistency with business necessity, and despite the existence of

promotional ranking systems known to have less adverse impact and be at least equally if not

greater in validity .

244.  The City cannot meet its burden of proving that the JFRD's promotional process is job-

related and consistent with business necessity.

245.    By virtue of the City's actions that have a demonstrated adverse impact towards Black

firefighters in all officer ranks in JFRD, the City's actions constitute race discrimination in

employment, disparate impact, in violation of Florida Statute § 760.10.

## *FLORIDA STATE CLAIMS AGAINST THE UNION, LOCAL 122*

### COUNT XII
### Race Discrimination, Pattern and Practice Against, the Union, Local 122, Florida Statute § 760.10

246.    Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through

194 of this Complaint as if fully rewritten herein.

247.    Defendant Union has failed to properly represent and give equal opportunities to Black and

Native American bargaining unit members and furthering discrimination in promotion in the

JFRD, by, among other things:

a.  consistently and continually persisting in negotiating CBAs with unlawful, non-merit-

based controls of the Union over the municipal promotional process with known adverse

effects on Blacks and Native Americans;

c.  insisting on written, cognitive examinations known to have adverse impact on Blacks and

Native Americans, to the exclusion of all other testing devices and the availability of

alternative and equally valid measures shown to have less adverse impact;

d.  bargaining for and insisting on employment of such and similar tests despite awareness of

"test banks" and "weighting the test" practices by JFRD officers and Union officials that

worked to the advantage of White candidates and the detriment of Black and Native

American candidates;

e.   knowingly and consistently engaging in collective bargaining that contains unlawful provisions with respect to promotion and the promotional process;

f.   insisting upon rank-ordered promotions from the eligibility lists, despite the lack of job-relatedness and inconsistency with business necessity of the written examinations;

g.   interfering with the City's and JFRD's ability to implement and conduct employment practices with respect to promotion that would result in equally or more valid processes with lesser adverse impact on Blacks and Native Americans; and

h.   failing or refusing to take proper action to correct the past and present effects of its discriminatory policies and practices to its members who are Black and Native American.; and

h.   deliberately planning and insisting on continuation of such practices in future examinations already scheduled, despite its awareness of their adverse impact.

248.   The Union cannot meet its burden of proving that the CBA-controlled aspects of JFRD's promotional process are job-related and consistent with business necessity.

249.   The Plaintiffs can establish that there exist alternative measures equally or more valid that have a lesser adverse impact on Black and Native American promotional candidates at JFRD.

250.   By exerting undue control and influence over the JFRD high-stakes promotional process, including requirement of written examinations to the exclusion of all others, randomly set cut-off scores, straight rank-ordering of promotions, and gaining access to exam questions and study materials and formats in the course of the promotional process, Defendant/Respondent Union's actions are intended at least in part to cause adverse impact against Blacks and Native Americans and constitute disparate impact race discrimination, in violation of Florida Statute § 760.10.

## COUNT XIII
### Race Discrimination, Disparate Impact, against the Union, Local 122
### Florida Statute § 760.10

251.   Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through

194 of this Complaint as if fully rewritten herein.

252.   Defendant Union, Local 122 has pursued and continues to pursue policies and practices

known to discriminate against Blacks and that deprive or tend to deprive Blacks and Native

Americans of employment opportunities because of their race.

253.   Defendant Union has failed to properly represent and give equal opportunities to Black and

Native American bargaining unit members and furthering discrimination in promotion in the

JFRD, by, among other things:

a.   consistently and continually persisting in negotiating CBAs with facially neutral policies

that have an adverse and discriminatory effect on Blacks and Native Americans;

b.   imposing the requirement of written, cognitive promotional examinations, to the

exclusion of all other methods for promotional examinations;

c.   imposing a seniority point system that has an adverse impact and perpetuates such impact

on Black and Native American candidates delayed promotions and thus seniority because of

Union control over the testing format;

d.   imposing the use of an arbitrarily-set cut-off score;

e.   requiring rank-ordering on certified eligibility lists and rank-ordered promotions, that

directly causes an adverse impact on Black and Native Americans in combination with the

other factors herein; and

f.   negotiating and insisting upon a CBA with an embedded promotional process that

overall contributes and/or causes adverse impact against Blacks and Native Americans.

254. Plaintiffs have established a prima facie case of disparate impact discrimination against Defendant/Respondent Union as set forth under the federal Uniform Guidelines of Employee Selection, C.F.R. 1607, et seq.

255. The Union cannot meet its burden of proving that the CBA-controlled aspects of JFRD's promotional process are job-related and consistent with business necessity.

256. The Plaintiffs can establish that there exist alternative measures equally or more valid that have a lesser adverse impact on Black and Native American promotional candidates at JFRD.

257. By exerting undue control and influence over the JFRD high-stakes promotional process, including requirement of written examinations to the exclusion of all others, randomly set cut-off scores, straight rank-ordering of promotions, and gaining access to exam questions and study materials and formats in the course of the promotional process, the Union is in violation of the prohibition against disparate impact in Florida Statute § 760.10.

### *STATE AND FEDERAL CLAIM AGAINST BOTH PARTIES*

### COUNT XIV
### Declaratory Judgment

258. Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 194 of this Complaint as if fully rewritten herein.

259. Plaintiffs are entitled to a declaratory judgment that the promotional examinations used as part of the promotional process in JFRD are not merit-based and, as such, are in violation of Title VII, Fla. Stat. § 760.10, and the Charter and Ordinances of the City.

260. Plaintiffs are entitled to a declaratory judgment that any and all provisions relating to promotions in the collective bargaining agreement between the City and Union are void and without effect as being in conflict with the Charter of the Consolidated City of Jacksonville

and Florida Statutes 447.309(3) and (5); and unlawfully interfering with the City's municipal duty to conduct high-stakes promotional testing in accordance with federally mandated laws.

261.   Plaintiffs are entitled to a Declaratory judgment that there is a compelling state interest in halting the discriminatory promotional process as dictated by the CBA under both State and federal law;

262.   Plaintiffs are entitled to a Declaratory judgment that there is a compelling state interest in redressing the past discriminatory effects of the discriminatory promotional process as dictated by the CBA under both State and federal law and also developed further and utilized for promotions by the City.

## RELIEF REQUESTED

263.   Plaintiffs incorporate by reference each of the allegations contained n Paragraphs 183 through 194, inclusive, of this Complaint as if fully rewritten herein.

264.   Wherefore, Plaintiffs pray this Court grant them judgment against the Defendants, jointly and severally, on their enumerated claims contained in Counts V, IX and XV, and request the following relief:

   a.   Immediate promotion into all ranking positions for which the Plaintiffs were or are candidates for all examinations at issue, and any pending examinations under the same format;

   b.   Back pay for each Plaintiff from the date of violation through the date of judgment;

   c.   Seniority adjustment of in-grade seniority from the date each of the examination eligibility lists at issue were certified;

   d.   Front pay for any and all favorable judgments from the date of judgment forward;

e. General compensatory damages relating to emotional distress, humiliation, and general loss of enjoyment of life exclusive of economic damages, in an amount to be determined at trial under applicable statutes allowing such damages, including 42 U.S.C. § 1981a and any other statutory or common law provisions for such damages;

f. Pre-judgment and post-judgment interest;

g. Declaratory judgment that any provisions relating to promotions in the collective bargaining agreement between COJ and IAFF Local 122 are void and without effect as being in conflict with the Charter of the Consolidated City of Jacksonville and Florida Statutes 447.309(3) and (5);

h. Declaratory judgment that the promotional examinations used as part of the promotional process in JFRD are not merit-based and, as such, are in violation the Charter of the Consolidated City of Jacksonville and the statutes of the State of Florida;

i. Declaratory judgment that the Consolidated City of Jacksonville has a compelling state interest in maintaining its civil service system for the purposes of promotion of its classified personnel and excluding promotions from any collective bargaining process;

j. Declaratory judgment that there is a compelling state interest in halting the promotional process as dictated by the CBA;

k. Preliminary injunction against the City of Jacksonville prohibiting it from administering any promotional examinations until a new promotional process can be developed and implemented that will be merit-based, job-related and will not

have an adverse impact against Black and Native-American promotional candidates;

l. Permanent injunction against the City, prohibiting it from continuing to discriminate in promotion against Black officers at JFRD;

m. Reasonable attorneys fees, costs, expenses, and expert witness fees, costs and expenses under 42 U.S.C. § 1988, 29 U.S.C. § 1920, and any other statutory or common law allowing for same;

n. Any other relief this Court deems necessary and just.

265. Plaintiffs pray this Court grant them judgment against Defendants Consolidated City of Jacksonville, on their enumerated claims contained in Counts I, II, III, IV, X, XI, XII and XV request the following relief:

a. Immediate promotion into all ranking positions for which the Plaintiffs were or are candidates for all examinations at issue, and any pending examinations under the same format;

b. Back pay for each Plaintiff from the date of violation through the date of judgment;

c. Seniority adjustment of in-grade seniority from the date each of the examination eligibility lists at issue were certified;

d. Front pay for any and all favorable judgments from the date of judgment forward;

e. General compensatory damages relating to emotional distress, humiliation, and general loss of enjoyment of life exclusive of economic damages, in an amount to be determined at trial under applicable statutes allowing such damages, including 42 U.S.C. § 1981a and any other statutory or common law provisions for such damages;

f. Pre-judgment and post-judgment interest;

g. Declaratory judgment that any provisions relating to promotions in the collective bargaining agreement between COJ and IAFF Local 122 are void and without effect as being in conflict with the Charter of the Consolidated City of Jacksonville and Florida Statutes 447.309(3) and (5);

h. Declaratory judgment that the promotional examinations used as part of the promotional process in JFRD are not merit-based and, as such, are in violation the Charter of the Consolidated City of Jacksonville and the statutes of the State of Florida;

i. Declaratory judgment that the Consolidated City of Jacksonville has a compelling state interest in maintaining its civil service system for the purposes of promotion of its classified personnel and excluding promotions from any collective bargaining process;

j. Declaratory judgment that there is a compelling state interest in halting the promotional process as dictated by the CBA;

k. Preliminary injunction against the City of Jacksonville prohibiting it from administering any promotional examinations until a new promotional process can be developed and implemented that will be merit-based, job-related and will not have an adverse impact against Black and Native-American promotional candidates;

l. Permanent injunction against the City, prohibiting it from continuing to discriminate in promotion against Black officers at JFRD;

m. Reasonable attorneys fees, costs, expenses, and expert witness fees, costs and expenses under 42 U.S.C. § 1988, 29 U.S.C. § 1920, and any other statutory or common law allowing for same;

n. Any other relief this Court deems necessary and just.

266.   Plaintiffs pray this Court grant them judgment against Defendant Jacksonville Association of

Firefighters, Local 122 IAFF, on their enumerated claims contained in Counts VI, VII, VIII,

XIII, XIV and XV  and request the following relief:

    a.  General compensatory damages relating to emotional distress, humiliation, and

       general loss of enjoyment of life exclusive of economic damages, in an amount to

       be determined at trial under applicable statutes allowing such damages, including

       42 U.S.C. § 1981a and any other statutory or common law provisions for such

       damages;

    b.  Pre-judgment and post-judgment interest;

    c.  Declaratory judgment  that any provisions relating to promotions in the collective

       bargaining agreement between COJ and IAFF Local 122 are void and without

       effect as being in conflict with the Charter of the Consolidated City of

       Jacksonville and Florida Statutes 447.309(3) and (5);

    d.  Declaratory  judgment that the promotional examinations used as part of the

       promotional process in JFRD are not merit-based and, as such, are in violation the

       Charter of the Consolidated City of Jacksonville and the statutes of the State of

       Florida;

    e.  Declaratory judgment that the Consolidated City of Jacksonville has a compelling

       state interest in maintaining its civil service system for the purposes of promotion

       of its classified personnel and excluding promotions from any collective

       bargaining process;

    f.   Declaratory judgment that there is a compelling state interest in halting the

       promotional process as dictated by the CBA;

g. Permanent injunction against the Jacklsonville Association of Firefighters, Local 122 IAFF, prohibiting it from continuing to discriminate in promotion against Black officers at JFRD;

h. Reasonable attorneys fees, costs, expenses, and expert witness fees, costs and expenses under 42 U.S.C. § 1988, 29 U.S.C. § 1920, and any other statutory or common law allowing for same;

i. Any other relief this Court deems necessary and just.

Respectfully submitted,

Dennis R. Thompson
Ohio Reg. #0030098
tmpsnlaw@sbcglobal.net
Thompson & Bishop Law Offices
946 Kenmore Boulevard
Village of Kenmore
Akron, Ohio 44314
330-753-6874
Fax: 330-753-7082
E-mail: tmpsnlaw@sbcglobal.net

Christy B. Bishop
Ohio Reg. #0076100
bishopchristy@gmail.com
Thompson & Bishop Law Offices
946 Kenmore Blvd.
Village of Kenmore
Akron, Ohio 44314
330-753-6874
Fax: 330-753-7082
Email: bishopchristy@gmail.com

**ATTORNEYS FOR PLAINTIFFS**

Neil Henrichsen
Florida Reg. # 0111503
Henrichsen & Seigel
1648 Osceola Street
Jacksonville, FL 32204
904-381-8183
Fax: 904-381-8191
www.hslawyers.com

**LOCAL ATTORNEY ON BEHALF OF PLAINTIFFS**

## JURY DEMAND

Plaintiffs demand a jury trial for each of their claims and causes of action to the extent permitted by law.

Christy B. Bishop