**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RUFUS SMITH, et al.,

        Plaintiffs,

vs.                                              Case No. 3:11-cv-345-J-32MCR

CONSOLIDATED CITY OF JACKSONVILLE,
JACKSONVILLE ASSOCIATION OF
FIREFIGHTERS, LOCAL 122, IAFF,

        Defendants.

---

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                              Case No. 3:12-cv-451-J-32MCR

CONSOLIDATED CITY OF JACKSONVILLE,
JACKSONVILLE ASSOCIATION OF
FIREFIGHTERS, LOCAL 122, IAFF,

        Defendants.

---

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

vs.                                              Case No. 3:12-cv-491-J-32TEM

JACKSONVILLE ASSOCIATION OF
FIREFIGHTERS, LOCAL 122, IAFF,

        Defendants.

## **ORDER**

A number of African-American and Native-American firefighters, the Department of Justice, and the Equal Employment Opportunity Commission, have all filed lawsuits to stop what they allege to be a racially discriminatory process for promoting firefighters in the City of Jacksonville (other lawsuits are pending before the undersigned with regard to the City's hiring of African-American firefighters[1]). Both the City and the Jacksonville Association of Firefighters, Local 122, International Association of Fire Fighters ("the Union"), have been named as defendants or identified as having a role in the allegedly discriminatory promotion process. Also, the NAACP, the Jacksonville Brotherhood of Firefighters, and a number of additional African-American firefighters seek to intervene in one of the cases. The parties have filed various motions which require the Court to determine an appropriate process to move these cases forward. The Court held a joint hearing on these issues on October 24, 2012, the record of which is incorporated by reference, and the parties submitted additional filings following the hearing.[2]

---

[1] See Coffey v. Braddy, 3:71-cv-44-J-32TEM; NAACP v. City of Jacksonville, 3:13-cv-161-J-32MCR; see also, Hopkins v. City of Jacksonville, 3:07-cv-147-J-32MCR (relating to the failure to promote one specific firefighter).

[2] The hearing transcript has been filed in all three cases. See Doc. 89 in Smith v.City of Jacksonville, Case No. 3:11-cv-345-J-32MCR ("the Smith suit"); Doc. 42 in United States v. City of Jacksonville, Case No. 3:12-cv-451-J-32MCR ("the DOJ suit"); Doc. 27 in United States Equal Employment Opportunity Commission v. Jacksonville Association of Firefighters, Local 122, IAFF, Case No. 3:12-cv-491-J-32TEM ("the EEOC suit"). In the Smith suit, the parties' relevant filings from before and after the hearing include Docs. 75, 76, 77, 83, 84, 92, 94, 95, 96, 98, 99; Docs. 93 & 97, requesting leave for extensions or additional briefing, are granted and the relevant filings may remain of record. From the DOJ suit, the relevant filings are Docs. 1, 21, 22, 23, 24, 26, 27, 28, 34, 35, 39, 40, 44, 45, 47, 50, 51. From the EEOC suit, the relevant filings are Docs. 1, 13, 14, 18, 19, 21, 22, 24, 25, 30,

### I.     The Three Lawsuits

In the first of the three suits filed (3:11-cv-345, now proceeding on the fourth amended complaint), Rufus Smith and 26 other African-American and Native-American firefighters are suing the City and the Union for racial discrimination in the City's promotion process, a process that is largely required by the terms of the City's collective bargaining agreement with the Union.  The Smith plaintiffs, who have unsuccessfully sought promotions to the ranks of Engineer, Lieutenant (Suppression), Captain (Suppression), Captain (Rescue), District Chief (Suppression), and District Chief (Rescue), have sued the City for violations of their rights to Equal Protection under the United States and Florida Constitutions (Counts I and IX); they have sued the Union for "race discrimination in contract and interference with civil rights under 42 U.S.C. § 1981" (Count VII); and they have sued both the City and the Union for disparate treatment under Title VII (Counts II and V) and Florida law (Counts X and XII), disparate impact under Title VII (Counts III and VI) and Florida law (Counts XI and XIII), and for conspiracy to deprive the plaintiffs of their civil rights in violation of 42 U.S.C. §§ 1985 and 1343(a) (Counts IV and VIII).  The Smith plaintiffs also seek a declaratory judgment which would void the promotion provisions of the collective bargaining agreement as being in violation of the City's charter and Florida law (Count XIV).          In the second suit filed (3:12-cv-451), the DOJ claims the City used a promotion process in certain years that resulted in a disparate impact upon black firefighters who sought promotions to the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and

---

35.

Engineer, and that the City continues to pursue policies and practices in its promotion process that discriminate. The Department of Justice claims these practices are in violation of Section 707 of Title VII and seeks back pay for the affected firefighters and an Order enjoining the City from engaging in discriminatory employment practices against blacks in the referenced fire department ranks. Because the promotion process at issue is embodied in the City's collective bargaining agreement with the Union, the Union is affected by the outcome of the DOJ suit and the DOJ has therefore named the Union as a Rule 19(a) defendant.[3]

A few days after the DOJ filed suit, the third suit in this series was filed by the EEOC (3:12-cv-491), naming only the Union as a defendant and seeking damages (both compensatory and punitive) under Title VII for the Union's alleged role in advocating for and negotiating in favor of an allegedly unlawful promotion process.[4,5]

---

[3]At the hearing, counsel for the DOJ explained (and then supported his position with additional briefing) that the DOJ does not have authority to seek relief against the Union and has therefore named it as a defendant only to satisfy Rule 19(a). The Union disagrees, contending the DOJ could seek relief from it but, upon review of the authorities cited, the Court is satisfied that the Union cannot be sued directly by the DOJ. However, the Court anticipates that the Union's nominal status will not at all diminish its ability to fully participate in the liability phase of the DOJ's case. See United States v. City of Hialeah, 140 F.3d 968, 976 (11th Cir. 1998) (explaining that DOJ could not establish prima facie case of disparate impact merely by consent with the City where unions, which had been joined as defendants under Rule 19, were not permitted to put on evidence to rebut the DOJ's showing).

[4]The EEOC has sued the Union under Section 703 of Title VII, which states that "[i]t shall be an unlawful employment practice for a labor organization . . . to cause or attempt to cause an employer to discriminate against an individual in violation of this section." 42 U.S.C. § 2000e-2(c)(3). While the EEOC's complaint also cites Sections 706(f)(1) and (3) (which relate to filing claims following individual employee charges), Section 707 of Title VII (which relates to the Attorney General's authority) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a (permitting compensatory and punitive damages) as authority for its

**II. The Motions**

The Jacksonville Branch of the NAACP, the Jacksonville Brotherhood of Firefighters,[6] and thirteen black firefighters employed by the City, have moved to intervene in the DOJ suit. The Union has moved to dismiss the EEOC suit. Both the City and the Union have moved to dismiss the Smith suit. The City alternatively suggests that Smith be stayed. The Smith plaintiffs have moved to have their case consolidated with the DOJ suit. The EEOC likewise

---

claims, the body of its complaint focuses nearly exclusively on the Section 703 claim.

[5]As an aside, the Court admits to some confusion with regard to the labels the parties have attached to some of their claims. For example, counsel for the DOJ and the EEOC have repeatedly stated that the difference between their cases is that the DOJ is bringing a disparate impact claim whereas the EEOC is bringing one for disparate treatment. However, the DOJ also emphasizes that it will prove its case by showing the City had a pattern and practice of discrimination. Yet the Court's reading of the case law suggests that pattern and practice is a means by which the government can prove a disparate treatment case, not a disparate impact case. See, e.g., Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 (1977) (describing pattern and practice as a means of proving disparate treatment); EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286-87 (11th Cir. 2000) (explaining that pattern and practice is a theory of intentional discrimination and a "variant of the disparate treatment theory"). See also Serrano v. Cintas Corp, 699 F.3d 884, 892 (6th Cir. 2012) (explaining that Teamsters' "pattern and practice" approach provides a method by which to prove intentional discrimination), rehr'g and rehr'g en banc denied (Jan. 15, 2013). The Court also questions the government parties' view that the EEOC suit- - which names only the Union- - is a disparate treatment case. The EEOC's claim is that the Union caused or attempted to cause the City to discriminate when the Union advocated for and negotiated in favor of a discriminatory promotion process. Cases such as Teamsters and Howard v. Int'l Molders & Allied Workers Union, 779 F.2d 1546 (11th Cir. 1986), do not appear to cast a union's potential liability under Section 703 in terms of disparate treatment; rather, they address whether the seniority system was "bona fide" and whether the union took "every reasonable step" to avoid a discriminatory process; though, like a disparate treatment claim, the conduct must be intentional. See Teamsters, 431 U.S. at 348-356; Howard , 779 F.2d at 1547, 1548 n.19. At some point, the parties will likely be asked to clarify these theories, but resolving the motions currently before the Court does not require them to do so now.

[6]The Jacksonville Brotherhood of Firefighters is a Chapter of the International Association of African-American Professional Fire Fighters.

5

moves to have its case consolidated with the DOJ suit.  These motions present various competing interests and a complex procedural puzzle.  In considering them, the Court has attempted to find a path that best affords "the just, speedy, and inexpensive determination of [these] action[s]."  Federal Rules of Civil Procedure, Rule 1.

Although there is little common ground among these parties, one essential point on which they do agree is that unless the City's promotion process is found to have an unlawful disparate impact on black firefighters, most of the parties' various other claims will not survive. With the possible exception of the Smith plaintiffs, the parties further agree that the suit by the DOJ should be the main stage for the litigation of that issue, with the other litigants playing a supporting role.  The DOJ explained that its case against the City would most efficiently evolve as follows:  first, the parties would engage in discovery to determine whether the City's ten specific test administrations on the four different officer ranks referenced in the DOJ's complaint have resulted in a disparate impact.  Once that round of discovery is completed (which will apparently involve the production of databases from the City, and analysis by experts), the parties will file briefs seeking a ruling as to whether a disparate impact exists. If the Court finds the tests did result in a disparate impact, the case would proceed to an entirely new round of discovery focusing on whether the City's use of the tests is nonetheless job-related and consistent with business necessity.  The parties would then seek a ruling on that issue.  If the tests are determined by the Court to be job-related and consistent with business necessity, the parties would then engage in discovery and motion practice to determine whether there are alternatives that would have less disparate impact.  If the answer is yes, then the City's promotion process (at least as to the

referenced tests) will be deemed to be unlawful and the case will move to the remedies stage. The DOJ represents that this procedure was recently followed by U.S. District Judge Nicholas Garaufis in the DOJ's Title VII disparate impact lawsuit against the City of New York over its firefighter hiring scheme. See United States v. City of New York, 637 F.Supp.2d 77 (E.D.N.Y. 2009) (finding City's hiring procedures had an unlawful disparate impact on black and Hispanic firefighters and case would therefore proceed to remedies phase). The Court agrees this appears to be a logical way for the DOJ case to proceed and it serves as a backdrop against which to decide the pending motions.

As to the NAACP, the Jacksonville Brotherhood of Firefighters, and the thirteen black firefighters seeking relief with them, the Court finds they may intervene as of right in the DOJ suit, at least through the liability phase, as they meet all the criteria to do so. See Fed.R.Civ.P. Rule 24(a)(2); United States v. City of New York, Case No. 07-cv-2067(NGG), 2007 WL 2581911, *7-11 (E.D.N.Y. Sept. 5, 2007) (permitting organization of black firefighters and individual minority firefighters to intervene under Rule 24(a) in DOJ disparate impact suit against City).[7] While their proposed complaint in intervention is styled as a class action (and seeks a jury trial), at oral argument, the proposed intervenors agreed that any determination as to the propriety of proceeding as a class would await much later developments in the case. Thus, the intervenor plaintiffs named in the complaint may fully participate in the DOJ suit through at least discovery and decision as to disparate impact. The intervenor plaintiffs shall file their complaint in intervention in the DOJ suit, but, because

---

[7] The Court would alternatively find they satisfy the standard to permissively intervene under Fed.R.Civ.P. Rule 24(b).

they essentially agree that their interest in actual prosecution of their own claims will only diverge from the DOJ's if and when the DOJ proves liability, the City's and Union's responses to the complaint in intervention will be abated until further Order. These intervenor plaintiffs will, however, be permitted to participate in discovery and briefing of the disparate impact issues raised by the DOJ's complaint.[8]

Taking up next the motions filed in the EEOC suit, the Court finds that although the Union's motion to dismiss is due to be denied, the EEOC's case against it should be stayed until such time as it has been determined in the DOJ case whether the City's promotion process creates an unlawful disparate impact. The Court further finds that the EEOC's suit may not be consolidated with the DOJ suit. In its lawsuit, the EEOC claims the Union violated Title VII by advocating for and negotiating in favor of a discriminatory promotion process. The Union seeks dismissal arguing that the case cannot proceed without the City, which is a necessary party; and that the Union cannot be held liable because an earlier Court decision found the promotion process to be lawful, so it had no affirmative duty to look for a remedy.[9] First, while the absence of the City may affect some of the remedies the EEOC may ultimately seek, the EEOC does request prospective injunctive relief against the Union and the City's absence would not necessarily affect that. See EEOC v. Peabody Western

---

[8] The Court assumes the intervenor plaintiffs will work with the DOJ to avoid any duplication of efforts.

[9] The Union also moved to dismiss on the grounds that the EEOC failed to engage in a good faith effort to conciliate. The Court tabled that issue for now to avoid having the parties divulge matters related to their confidential settlement discussions. If and when the EEOC case is reactivated, the Union may resurrect the issue if appropriate.

Coal Co., 610 F.3d 1070, 1084 (9th Cir. 2010) (holding that case should proceed even if not all requested relief would ultimately be available). As to the Union's second argument, the Court finds it is foreclosed by the Eleventh Circuit's Howard case, which noted as an "established principle" that "labor organizations, as well as employers, have an affirmative duty to take corrective steps to prevent the perpetuation of past discrimination." Howard v. International Molders & Allied Workers Union, 779 F.2d 1546, 1547 (11th Cir. 1986).[10] Thus, the Union's motion to dismiss is due to be denied.

However, the EEOC's claims are entirely dependent on a finding of unlawful disparate impact caused by the City's promotion process. While the EEOC seeks to participate in the process of assessing the disparate impact of the City's promotion process through consolidation of its suit with the DOJ suit, the Court finds that the EEOC's statutory authority, which specifically precludes the EEOC from pursuing claims or taking any action against a government, prevents it from doing so.[11]    See 42 U.S.C. § 2000e-

---

[10] The Burden case relied on by the Union involved a typical employee generated disparate treatment claim against her union, and not a Section 703 case alleging union negotiation in favor of an employer's discriminatory policy. See Burden v. International Longshoremen's Ass'n, Local #1410, 510 F.Supp.2d 618, 621 (S.D. Ala. 2007). In finding the union had no duty to police the employer's workplace to prevent individual instances of harassment, Burden itself noted that the Howard case presented a different posture than the case before it because Howard addressed a union's duty to "press for an end to institutionalized" discrimination while negotiating a collective bargaining agreement. Id. at 623 n. 3. The Court therefore finds that Burden does not compel dismissal here.

[11] The Court does not view this as being inconsistent with its holding that the DOJ, which cannot directly sue the Union, may nonetheless name it as a Rule 19 defendant in its case. Title VII specifically directs that the EEOC "shall take no action" against a government once conciliation efforts fail. 42 U.S.C. § 2000e-5(f)(1). The DOJ's inability to sue the Union is not so clearly stated in the statute and does not appear to prevent it from naming the Union as a Rule 19 defendant. Additionally, the Union does not object to participating in the DOJ

5(f)(1).  See also Peabody, 610 F.3d at 1080-84 (explaining that EEOC was statutorily precluded from naming Secretary of Interior as a Rule 19 defendant).[12] Thus, the EEOC suit will be stayed at least until the disparate impact issue is decided.

Finally, as to the Smith case, both the Union and the City have moved to dismiss the case and the City alternatively has moved to stay it.  The Smith plaintiffs seek to consolidate their case with the DOJ suit.  Both the Union and the City criticize the current Smith complaint on two basic grounds:  first, that it is duplicative of the DOJ action which essentially occupies the field; and second, that it suffers from various pleading deficiencies.  As to the first point, the Court finds that while the claims raised by the DOJ case are included within Smith, Smith raises a number of additional related and unrelated claims.  Additionally, because any affected Smith plaintiffs may be entitled to pursue remedies if liability is established in the DOJ case, they would be permitted to prosecute those same claims through intervention if they had not already filed their own suit.  Furthermore, neither the EEOC suit nor the DOJ suit appear to have been instigated by the filing of any particular

---

suit (and has already filed an answer to the complaint).  The City, on the other hand, vigorously objects to having any role in defending a suit by the EEOC, which it would be required to do if the EEOC injected itself into the disparate impact phase of the DOJ litigation.  Finally, the EEOC is not prejudiced by being left out of the first phase of the litigation against the City because the DOJ has picked up the mantle on behalf of the people of the United States, which is of course the same party whose interests the EEOC is designed to protect.

[12]In support of its position, the EEOC provided the Court with Orders filed in several cases in which it participated via consolidation with actions pending against a government entity.  However, the propriety of its doing so does not appear to have been litigated in those cases and the Court finds the language of the statute and the Peabody case to be more persuasive on this point.

employee charge, thus distinguishing the facts here from those in EEOC v. Frank's Nursery & Crafts, Inc., 177 F.3d 448, 456 (6th Cir. 1999), where the Sixth Circuit explained that if the EEOC elected to file suit based on an employee's charge, that individual employee had no ability to proceed on her own without the EEOC. Here, by contrast, the EEOC granted each of the Smith plaintiffs the right to sue. The Court has not seen any authority (and the parties have cited none) that would suggest that the EEOC could at its own option rescind that notice once litigation is already underway. Additionally, both the EEOC and the DOJ were in support of the consolidation of Smith with the DOJ case.[13] Thus, the Court rejects the notion that the filing of the DOJ suit requires Smith to be dismissed.

As to the alleged pleading deficiencies in the fourth amended complaint in Smith, the Court is largely satisfied that the pleading standards have been met and it will not therefore, require further efforts to replead at this time. This decision, though, is partially driven by the Court's determination that, as explained below, the Smith case is due to be stayed (except as to some of their disparate impact claims) while the liability phase of the DOJ suit is ongoing (which phase, when concluded, will surely require further reframing of the Smith complaint). Proceeding with the DOJ suit first will go a long way toward resolving much of this litigation. The Court appreciates that Smith was the earlier filed case, but if relief is achieved by the DOJ, it will likely inure to the benefit of all the plaintiffs in these cases. Because the Court will permit the Smith plaintiffs to participate in the disparate impact

---

[13]The City's view is that any party wanting to join in the DOJ litigation may only do so via intervention. The effect of permitting the Smith plaintiffs to participate by consolidation while the remainder of their case is stayed would appear to achieve nearly the same result.

litigation, they are not unduly prejudiced by a stay of the rest of their claims.[14]  Thus, the Court will permit consolidation of the Smith case with the DOJ case only to the extent that the specific claims for disparate impact raised in Smith that are the same as those raised by the DOJ may proceed on a consolidated basis through the liability phase.

Accordingly, it is hereby

**ORDERED**:

1.	The NAACP, Jacksonville Brotherhood of Firefighters and individual plaintiffs' motion to intervene in the DOJ action (filed as Doc. 28 in Case No. 3:12-cv-451-J-32MCR) is **GRANTED** to the extent stated above.  No later than **May 2, 2013**, the intervenor plaintiffs are directed to file their complaint in intervention but, as noted above, the defendants need not file responses to it at this time.

2.	The Union's Motion to Dismiss the EEOC suit (filed as Doc. 13 in Case No. 3:12-cv-491-J-32TEM) is **DENIED**.  However, the Union need not file an answer until directed and the Court will stay this case pending results of the liability phase in the DOJ suit. The EEOC's Motion to Consolidate (filed as Doc. 19 in 3:12-cv-491-J-32TEM) is **DENIED**. The Clerk shall administratively close this file during the pendency of the stay.

3.	The Smith plaintiffs' Motion to Consolidate (Doc. 75 in Case No. 3:11-cv-345-J-32MCR) is **GRANTED** to the limited extent that the Smith case will be consolidated with the DOJ suit for purposes of litigation on the DOJ's disparate impact claims against the City.  In all other respects, the Smith case is **STAYED**.  The City's and the Union's Motions to

---

[14]Alternatively, if the Smith plaintiffs wish to pursue any of their Florida claims in state court, they are free to dismiss them from this case without prejudice to filing them there.

Dismiss the Smith case (filed as Docs. 95 & 96 in Case No. 3:11-cv-345-J-32MCR) are **DENIED**; the City's alternative request that the Smith case be stayed (see Doc. 95 in 3:11-cv-345) is granted in part as stated. Because of the stay, the City and Union need not file responses to the fourth amended complaint in Smith until further Order.

4. In light of the delay between the filing of their original proposed schedule and now,[15] and with the procedural posture of these cases settled, the parties to the DOJ suit, in consultation with counsel for the Smith plaintiffs and the DOJ suit intervenor plaintiffs, are requested to file an amended proposed case schedule no later than **May 2, 2013**.

**DONE AND ORDERED** in Jacksonville, Florida this  30th  day of March, 2013.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies to:

counsel of record
counsel for all interested or moving parties

---

[15] The Court received a letter from the attorney for the NAACP and related parties questioning the Court's delay in ruling on its motion to intervene. The Middle District of Florida currently has two (soon to be three) judicial vacancies, including one longstanding vacancy in the Jacksonville Division, which is affecting the Court's ability to timely rule on pending motions. However, as the Court has not authorized any discovery or set any case management deadlines for these cases yet, the NAACP's concern that it is being "left behind" is puzzling.